# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK L. KING,<br>    Plaintiff,<br><br>v.<br><br>OFFICER MATTHEW CAVALLO,<br>*et al.*,<br>    Defendants. | :<br>:<br>:<br>:  CIVIL ACTION NO. 19-CV-1005<br>:<br>:<br>:<br>: |

## MEMORANDUM

JONES, J.                                                                                               MAY 20, 2019

Plaintiff Derrick L. King, a prisoner at the Berks County Jail who is proceeding *pro se*, brings this civil action pursuant to 42 U.S.C. § 1983 based on his arrest, prosecution, and conviction in Berks County for prohibited possession of a firearm. *See Commonwealth v. King*, Docket No. CP-06-CR-0004202-2017 (Berks Cty. Court of Common Pleas). His Amended Complaint names Officer Matthew Cavallo, the officer who arrested and charged him, as the only Defendant. For the following reasons, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915(e)(2)(B)(ii) as legally baseless and for failure to state a claim.

## I.    FACTS AND PROCEDURAL HISTORY

King filed his initial Complaint against Officer Cavallo, Assistant District Attorney Adam McNaughton, Assistant Public Defender Amber Moll, Judge Patrick T. Barrett, Uptown Transportation Services, the Wyomissing Police Department, and Amanda Kasardo (identified as a DNA scientist). His Complaint raised claims arising from his arrest on August 23, 2017 and his subsequent prosecution and conviction for prohibited possession of a firearm.

1

Public dockets reflect that King was charged and arraigned on August 23, 2017 on gun and drug charges. *See Commonwealth v. King*, Docket No. MJ-23202-CR-0000398-2017. The Hon. Patrick T. Barrett presided over King's criminal case, Adam McNaughton served as the prosecutor on the case, and Amber Moll was appointed to represent King and served as his counsel through trial. *See Commonwealth v. King*, Docket No. CP-06-CR-0004202-2017 (Berks Cty. Court of Common Pleas). The procedural history is not entirely clear from the docket, but on December 6, 2018, the court conducted a "Guilty Plea-Sentencing," imposed a sentence of five to ten years of imprisonment on the conviction for prohibited possession of a firearm, and dismissed the remaining charges. After unsuccessful post-trial motions, King appealed. His appeal remains pending. *See Commonwealth v. King*, 358 MDA 2019 (Pa. Super. Ct.).

In his initial Complaint King primarily alleged that he was falsely arrested, falsely imprisoned, and maliciously prosecuted. King alleged that on August 23, 2017, he "purchased (a) taxi transportation fee." (Compl. at 9.)[1] Officer Cavallo stopped the taxi in which King was traveling and saw King "scuffling" during the stop. (*Id.*) Officers recovered a loaded revolver from a bag that was under the front seat of the car and, according to King, conducted DNA testing. King alleged that he should not have been prosecuted without a grand jury indictment, that his speedy trial rights were violated, that Moll violated his right to equal protection by treating him differently from other clients, and that Judge Barrett violated his rights by denying him nominal bail.

King attached documents as exhibits to his Complaint in support of his claims, including Officer Cavallo's affidavit of probable cause. The affidavit alleges that Cavallo observed King

---

[1] The Court adopts the pagination assigned to King's pleadings by the CM-ECF docketing system.

"shuffling" during the course of the traffic stop, and asked King to show his hands because they had been in the vicinity of King's waist band area. (*Id.* at 32.) According to the affidavit, as King put his hands up, Officer Cavallo observed King "pushing a bag underneath the front seat in front of him" and saw a "small bag of marijuana on his right leg by his front pocket," at which point he searched the car and found the gun. (*Id.*). Officer Cavallo also determined that King was prohibited from carrying a firearm. (*Id.*) King's exhibits also included a post-sentence motion indicating that Moll had moved to suppress the evidence found in the taxi—presumably the gun—as a result of an illegal stop, and that the Court denied the motion. (*Id.* at 21.) King sought compensatory and punitive damages in connection with his detention.

In a Memorandum and Order docketed on April 9, 2019, the Court granted King leave to proceed *in forma pauperis* and dismissed his Complaint as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915(e)(2)(B)(ii). First, the Court dismissed King's claims against Judge Barrett as legally frivolous because those claims were barred by absolute judicial immunity. Second, the Court dismissed King's claims against Assistant District Attorney McNaughton as legally frivolous because those claims were barred by absolute prosecutorial immunity. Third, the Court dismissed King's claims against Moll as legally baseless because a public defender is not a state actor for purposes of § 1983. Fourth, the Court dismissed King's claims against Uptown Transportation Services as legally baseless because that Defendant was not a state actor subject to liability under § 1983 by virtue of cooperating with or providing information to the police.

Fifth, the Court construed the Complaint as raising claims against Officer Cavallo for false arrest, false imprisonment, and malicious prosecution. However, King failed to allege sufficient facts in support of those claims and several of the claims were barred by *Heck v.*

3

*Humphrey*, 512 U.S. 477, 486-87 (1994) because they sought damages for a conviction and related imprisonment that had not been vacated. The Court also observed that issue preclusion might bar King from challenging issues previously litigated in his suppression motion. Sixth, the Court dismissed King's claims against the Wyomissing Police Department for failure to state a claim because King failed to allege that a policy or custom of the Wyomissing Police Department led to the violation of his rights. Finally, the Court dismissed King's claims against Kasardo because King failed to allege facts establishing that she violated his constitutional rights.

King was given leave to file an amended complaint, which he did.[2] The Amended Complaint identifies Officer Cavallo of the Wyomissing Police Department as the only Defendant and asserts claims against him in his individual and official capacity. King alleges that Officer Cavallo violated his Fourth Amendment rights by "pull[ing] over the taxi [in which King was traveling] for [a] traffic stop violation for having dark tinted windows" and then "search[ing] where [King] was seated" as well as the front seat next to the driver where the gun was found. (Am. Compl. at 5.) King alleges that he was arrested and charged with possession of the firearm "with no evidence . . . other than [Cavallo] claiming to have sought [sic] [King] making movements through dark tinted windows [to] place the firearm under the front seat." (*Id.* at 6.) According to King, the driver of the cab "stated otherwise at trial." (*Id.*) He also claims

---

[2] After the Court issued its Memorandum and Order, a document that was received by the Court on March 15, 2019 was docketed as an Amended Complaint. (ECF No. 11.) It appears that this document was filed by King as a supplement to his initial Complaint. The one-page document does not cure the defects in the initial Complaint. Furthermore, King subsequently filed an Amended Complaint that supersedes that version. (ECF No. 12.); *see Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint.").

4

violation of his Miranda rights and his right to a grand jury. King asks this Court to "overturn" his conviction and for compensatory and punitive damages.[3]

## II. STANDARD OF REVIEW

As King is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the Complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). As King is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Request to Overturn Conviction

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."

---

[3] To the extent the Amended Complaint suggests that King has been defamed, there is no legal basis for a constitutional defamation claim here. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (explaining that an individual does not have a constitutionally protectable interest in reputation alone and stigma alone is insufficient to support a constitutional claim).

5

*Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, King's request that this Court overturn his conviction is not cognizable in a § 1983 action. Rather, if he seeks to challenge his conviction in federal court, his sole remedy is to file a petition for a writ of *habeas corpus* after exhausting state remedies. *See* 28 U.S.C. § 2254.

### B. Official Capacity Claims

"Official-capacity suits[] . . . .' generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Here, King's claims against Officer Cavallo in his official capacity are essentially claims against the municipality of Wyomissing.

A municipality or local government entity is not liable under § 1983 based solely on an allegation that an employee of that entity committed a constitutional violation. *See Monell v. Dep't of Soc. Servs of N.Y.*, 436 U.S. 658, 691 (1978). Rather, a municipality or a local government entity is only liable under § 1983 if a policy or custom of that entity caused the constitutional violation in question. *Id.* at 694. A plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Nothing in the Amended Complaint suggests that the claimed constitutional violations stemmed from a municipal policy or custom. The Court will therefore dismiss King's claims against Officer Cavallo in his official capacity.

### C. Individual Capacity Claims Against Officer Cavallo

The Court understands King to be raising claims against Officer Cavallo for falsely arresting him, falsely imprisoning him, maliciously prosecuting him, and subjecting him to an illegal search and seizure when he stopped and searched the taxi in which King was travelling.

#### 1. Stop of the Taxi

Whether the traffic stop of the taxi was justified depends on whether the stop was supported by reasonable suspicion of illegal activity. *Whren v. United States*, 517 U.S. 806, 813 (1996). "[A]s long as an 'objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated [a] traffic-code provision,' the stop is constitutional 'even if the officer is mistaken about the scope of activities actually proscribed . . . .'" *United States v. Hall*, 270 F. App'x 123, 126 (3d Cir. 2008) (quoting *United States v. Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006)) (alterations in original). Subject to certain exceptions, Pennsylvania law prohibits the driving of "any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa. Cons. Stat. § 4524(e).

Here, King alleges that Officer Cavallo violated his Fourth Amendment rights by "pull[ing] over the taxi [in which King was traveling] for [a] traffic stop violation for having dark tinted windows." (Am. Compl. at 5.) Given King's acknowledgment that the taxi had "dark tinted windows," Officer Cavallo could have reasonably believed that the taxi was in violation of Pennsylvania's traffic laws. The stop was therefore justified by reasonable suspicion, so the Court will dismiss this claim. *See, e g , United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011) (concluding that traffic stop was "based on an articulable and reasonable suspicion that either the vehicle or an occupant violated the law" when the officer "stopped [the]

7

vehicle because of the tinted windows in violation of 75 Pa.C.S. § 4524(e) and the loud music"); *Hall*, 270 F. App'x at 126 ("Viewing these facts from the perspective of a reasonable law enforcement officer on the scene, the window tint on Hall's vehicle was sufficient to establish reasonable suspicion that Hall had violated a traffic ordinance."); *United States v. Meran*, Cr. A. No. 16-222, 2017 WL 4803927, at *7 (W.D. Pa. Oct. 23, 2017) ("The police have reasonable suspicion justifying a traffic stop when a vehicle has dark tinted windows in violation of Pennsylvania law.").

### 2. Search of the Taxi and King's Arrest

Turning to Officer Cavallo's search of the taxi, pursuant to what is known as the "automobile exception," a warrantless search of an automobile is justified if it is supported by probable cause to believe contraband or evidence of a crime is in the car. *See United States v. Ross*, 456 U.S. 798, 809 (1982). "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. Pennsylvania law prohibits certain felons from possessing firearms and prohibits the carrying of a firearm in a vehicle without a "valid and lawfully issued license." 18 Pa. Cons. Stat. §§ 6105 & 6106(a)(1). Pennsylvania law also prohibits the possession of marijuana. 35 Pa. Cons. Stat. § 780-113(a)(31).

Officer Cavallo's search of the car was supported probable cause because of his observation of marijuana combined with his observation of King's furtive movements to discard the bag with the gun. As noted above, Officer Cavallo's affidavit of probable cause indicates that he observed King shuffling during the course of the traffic stop, observed King "pushing a bag underneath the front seat in front of him" and saw a "small bag of marijuana on [King's] right leg by his front pocket," at which point he searched the car and found the gun.[4] (Compl. at 32.) Officer Cavallo then determined that King was prohibited from carrying a firearm. (*Id.*) King's Amended Complaint does not allege any facts that would counter a finding of probable cause on this record. Rather, he seems to be alleging that the search and his related arrest were not supported by probable cause because, although Officer Cavallo claimed to have observed King "making movements to place the firearm under the front seat," the taxi driver "stated otherwise at trial." (Am. Compl. at 6.) Even if the driver had a different account of what he observed, that inconsistency does not preclude probable cause based on Officer Cavallo's own observations of King and his conduct. The Court will dismiss King's Fourth Amendment claims related to the search and his arrest.[5]

---

[4] King submitted the affidavit of probable cause with his initial Complaint, so it may be considered by the Court as integral to his claims and as part of the record.

[5] King also alleges that Cavallo failed to provide him *Miranda* warnings. That allegation does not state a constitutional claim because King does not also allege that he made statements during a custodial interrogation that were used against him at trial. *See Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003) ("[Q]uestioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial.").

9

### 3. King's Prosecution

The Court understands King to be alleging that he was maliciously prosecuted in violation of the Fourth Amendment and that his prosecution was constitutionally defective in other respects. A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). Furthermore, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486-87 (footnote and citation omitted). As the charge in question did not terminate in King's favor and as his conviction has not been overturned or otherwise invalidated, he may not proceed on his constitutional challenges to his prosecution at this time because those challenges are not yet cognizable.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss King's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915(e)(2)(B)(ii) as legally frivolous and for failure to state a claim for relief. King's claims will be dismissed with prejudice with the exception of his claims that are barred by *Heck v. Humphrey*, which will be dismissed without prejudice to King filing a

10

new lawsuit in the event his conviction is overturned or otherwise invalidated. King will not be given leave to file a second amended complaint in this case because further attempts at amendment would be futile. An appropriate Order follows.

BY THE COURT:

_____
C. DARNELL JONES, II, J.